**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | |
|---|---|
| JASON NEWMAN, | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) |
| CITY OF HUMBOLDT, THE CITY | ) |
| OF HUMBOLDT BOARD OF | )   No. 1:20-cv-01193-STA-jay |
| EDUCATION, and LILLIAN SHELTON, | ) |
| and LEON MCNEAL, in their | ) |
| individual capacities, | ) |
| | ) |
| **Defendants.** | ) |

## ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS

Before the Court is Defendant Leon McNeal's Motion for Judgment on the Pleadings (ECF No. 30) filed February 19, 2021. Plaintiff Jason Newman has responded in opposition, and McNeal has submitted a reply brief. For the reasons set forth below, the Motion is **DENIED**.

## BACKGROUND

Plaintiff Jason Newman filed this action on August 27, 2020. According to the Complaint, Defendant City of Humboldt Board of Education hired Newman as a school principal in June 2018. Newman is white, and the director of the Humboldt system at that time was Dr. Versie Hamlett, Humboldt's first black school director. According to the Complaint, Leon McNeal, the chair of the Humboldt Board of Education and an alderman for the City of Humboldt, disagreed with Dr. Hamlett's decision to hire Newman. In March 2020, Dr. Hamlett filed suit in federal court alleging that McNeal had openly expressed his opinion that the school system needed to replace white teachers with black teachers and pressed Dr. Hamlett to make

hiring and personnel decisions consistent with McNeal's views. *Id*. ¶ 9.[1] At some point, and the Complaint does not allege when, the Board replaced Dr. Hamlett with Lillian Shelton as director of the school system.

The Complaint alleges that even though the Board had renewed Newman's contract as principal of Humboldt Junior and Senior High School for the 2020-2021 school year in May 2020, Shelton subsequently demoted Newman on August 10, 2020, just days after Dr. Hamlett resolved her suit against the district. *Id*. ¶ 10–12. Shelton reassigned Newman to be assistant principal at East Elementary School, a position that Shelton created without approval or funding from the school board. *Id*. ¶ 13. The same day Shelton reassigned Newman, Carla Brown, a black female, announced to her then-employer in Madison County that she was accepting Newman's old job as principal in Humboldt. *Id*. ¶ 14. The Complaint goes on to allege that the district did not follow the normal hiring process in selecting Brown. From all of these premises, Newman alleges claims of race discrimination against all Defendants in violation of 42 U.S.C. § 1981 and § 1983 as well as the violation of his Fourteenth Amendment right to equal protection. Newman further alleges that the City of Humboldt and the Humboldt Board of Education are liable for violations of the Tennessee Human Rights Act.

---

[1] *See* Hamlett v. City of Humboldt, W.D. Tenn. No. 1:20-cv-02223-JDB-jay. Dr. Hamlett alleged that McNeal had directed her to "clean house," by which she understood him to mean fire white educators and replace them with black educators, an action Dr. Hamlett opposed and believed to be unlawful. Verified Compl. ¶ 22–24 (ECF No. 1, no. 1:20-cv-02333). Dr. Hamlett's pleading also alleged that McNeal told her her "head was on the chopping block" after she hired a white principal in June 2018, presumably Newman. *Id*. ¶ 21. Dr. Hamlett's contract as director of schools was not renewed in 2019, and her suit alleged claims of retaliatory discharge.

Other than a brief summary of Dr. Hamlett's suit, Newman's Complaint does not incorporate by reference any of the allegations contained in the Verified Complaint filed by Dr. Hamlett; Newman simply alleges that Dr. Hamlett filed suit and that she made certain allegations about McNeal.

McNeal now seeks judgment as a matter of law on Newman's claims against him in his individual capacity. McNeal argues that the Complaint fails to allege how McNeal personally violated Newman's rights under section 1981 or his equal protection rights. The pleadings do not allege any facts to show that McNeal was personally involved in Newman's demotion and reassignment to another school. Because the Complaint does not include these essential elements of Newman's claims as to McNeal, the Court should dismiss them.

Newman has responded in opposition. Newman points to the following factual allegations in his Complaint to tie McNeal to his demotion. First, the Complaint alleges that McNeal opposed Dr. Hamlett's decision to hire Newman in the first place. Second, McNeal created an atmosphere in the school system of "institutional racism," specifically by McNeal's advocacy of hiring more black educators and his personal opinion about black teachers being better able to relate to black students. Third, the interview process to select Newman's replacement let the applicants know that the district felt there "too many whites in the system teaching our black kids." Finally, the Complaint alleges that Newman's demotion was part of a campaign by McNeal and the Board to replace white teachers with black teachers in the public school system. Newman contends that these premises suffice to hold McNeal personally liable for his involvement in Newman's demotion.

In his reply McNeal argues that none of the allegations Newman points to actually show how McNeal directly participated in the decision to reassign Newman. The Complaint alleges that Shelton carried out the demotion. Nothing shows that McNeal encouraged Shelton to take action or that he implicitly authorized it, approved it, or knowingly acquiesced in her decision. On the contrary, the Complaint suggests that Shelton acted on her own. McNeal maintains then

that the Complaint fails to allege plausible claims for relief against him in his individual capacity.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) states, "After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings may be granted where the moving party "is entitled to judgment as a matter of law." *Cincinnati Ins. Co. v. Beazer Homes Invs., LLC*, 594 F.3d 441, 444 (6th Cir. 2010). Just as with Rule 12(b)(6) motions, the Court must consider a Rule 12(c) motion by "constru[ing] the complaint in the light most favorable to the plaintiff and accept[ing] all allegations as true." *Jackson v. City of Cleveland*, 920 F.3d 340, 352 (6th Cir. 2019). A pleading's factual allegations must be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, i.e., more than merely possible. *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). However, "a legal conclusion couched as a factual allegation" need not be accepted as true on a Rule 12(c) motion, nor are recitations of the elements of a cause of action sufficient. *Marais v. Chase Home Finance LLC*, 736 F.3d 711, 713 (6th Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Although the factual allegations in a pleading need not be detailed, they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

4

liable for the misconduct alleged." *Bullington v. Bedford Cnty., Tenn.*, 905 F.3d 467, 469 (6th

Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678)).

## ANALYSIS

The issue presented at the pleadings stage is whether the Complaint states a plausible

claim for relief against Defendant Leon McNeal who allegedly used his role as chair of the

Humboldt Board of Education to cause Newman to be demoted and reassigned to another school

on account of Newman's race.  State actors like McNeal can be sued in their official capacity or

individual capacity.  An official capacity claim "is only nominally against the official and in fact

is against the official's office," while an individual capacity claim seeks to hold a defendant

individually liable for his own actions. *Lewis v. Clarke*, 137 S.Ct. 1285, 1291 (2017) (citing *Will*

*v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).   Newman would hold McNeal

individually liable for race discrimination under 42 U.S.C. § 1981 and the violation of his equal

protection rights under 42 U.S.C. § 1983.

Section 1981 "prohibits intentional race discrimination in the making and enforcing of

contracts involving both public and private actors," including "the making, performance,

modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms,

and conditions of the contractual relationship." *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th

Cir. 2006) (other citations omitted).  Like Title VII, "§ 1981 prohibit[s] discrimination in the

employment context and provide[s] a private right of action against violations of the prohibition"

with one important exception. *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 829–30 (6th

Cir. 2019) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975)).  Where a

plaintiff would hold a state actor like McNeal liable in his individual capacity for violations of §

1981, § 1983 provides "the exclusive mechanism to vindicate violations of § 1981 by an

individual state actor acting in his individual capacity." *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012). Therefore, any § 1981 claim against McNeal is properly analyzed under 42 U.S.C. § 1983.

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a § 1983 plaintiff must prove "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law," commonly known as a state actor. *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). Newman alleges that McNeal is liable for the violation of his statutory rights under § 1981 as well as his constitutional rights. The constitutional right at stake here is the equal protection of the laws guaranteed by the Equal Protection Clause of the Fourteenth Amendment. U.S. Const. am. XIV § 1 ("No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."). The Equal Protection Clause specifically protects a public employee from discrimination on account of his race in the terms and conditions of his employment. *Roschival v. Hurley Med. Ctr.*, 695 F. App'x 923, 927 (6th Cir. 2017).

The real question in this case is whether the Complaint alleges the kind of personal involvement required to hold McNeal liable as a supervisory official in an individual capacity. The parties agree that McNeal may not be held personally liable for Shelton's actions, merely on the basis of *respondeat superior*. *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Winkler v. Madison Cnty.*, 893 F.3d 877, 898 (6th Cir. 2018) (citing *Bellamy v.*

6

*Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).  It is well settled that a supervisor will not be liable

"simply because he or she was charged with overseeing a subordinate who violated the

constitutional rights of another."   *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir.

2016) (citing *Gregory v. City of Louisville,* 444 F.3d 725, 751 (6th Cir. 2006).

Instead, Newman must prove McNeal's own "[a]ctive unconstitutional behavior," and not

a "mere failure to act" on his part.  *Id.*  Under this standard, the Court holds that Newman's

Complaint alleges enough facts to state a plausible claim against McNeal in his individual

capacity.  The allegations of the Complaint viewed in a light most favorable to Newman allege

that the director of the district Lillian Shelton removed Newman from his job as principal and

reassigned him to a position as an assistant principal at an elementary school.  In doing so,

Shelton filled the position Newman vacated as principal at Humboldt Junior and Senior High

School in a manner that violated board policies: she targeted Newman on account of his race;

pre-selected Newman's successor, a black female; and then just went through the motions of a

hiring process.  Newman alleges that Shelton even communicated to applicants for the job that

the district needed and preferred a black candidate for the position.

While nothing in these allegations suggests that McNeal personally directed Shelton to

take these actions, a reasonable inference from other allegations in the pleadings, though perhaps

not a particularly strong one, is that McNeal at the very least "encouraged the specific incident of

misconduct." *Peatross*, 818 F.3d at 242.  Several facts in the Complaint support the inference.

First, McNeal opposed Newman being hired as the high school principal in the first place,

presumably because of Newman's race.  McNeal chaired the Humboldt Board of Education,

stated his view that the district needed more black educators, and went so far as to advocate for

the district to replace white educators with black educators.  Newman's hiring was at odds with

McNeal's philosophy for a more race-conscious approach to hiring and personnel decisions in the Humboldt schools.  Furthermore, Dr. Hamlett, the director who hired Newman in 2018, clashed with McNeal over his philosophy and earned McNeal's chagrin and disapproval over her decision to hire Newman.  Once Dr. Hamlett was no longer the director of the school system (and presumably in a position to protect Newman's job), her replacement Lillian Shelton implemented McNeal's preferred policy regarding black educators.  The fact that Newman lost his position after only two years on the job and only once the district had removed Dr. Hamlett over her disagreement with McNeal tends to suggest that McNeal implicitly authorized and approved of Shelton's decision to demote and reassign Newman because of his race.  *Campbell v. City of Springfield, Ohio*, 700 F.3d 779, 790 (6th Cir. 2012) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  This suffices to state a claim against McNeal in his individual capacity for the violation of Newman's federal constitutional and statutory rights under § 1983.

## CONCLUSION

The Complaint states a plausible claim under 42 U.S.C. § 1983 for race discrimination under § 1981 and the violation of Newman's Fourteenth Amendment equal protection rights.  Therefore, the Motion for Judgment on the Pleadings is **DENIED**.

**IT IS SO ORDERED**.

s/ **S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: May 26, 2021.